Deavours D. BUSH and Arnold A. Bush, a copartnership doing business as Bush Dairy, Appellants

v.

UNITED STATES of America, Appellee.

No. 15582.

United States Court of Appeals Fifth Circuit.

Feb. 23, 1956.

Rehearing Denied April 13, 1956.

suit just twenty-four days after the filing of the alleged libelous complaint.

Lester E. Wills, Meridian, Miss., David C. Welch, Laurel, Miss., Welch & Gibbes, Laurel, Miss., of counsel, for appellants.

Edwin R. Holmes, Jr., Asst. U. S. Atty., Robert E. Hauberg, U. S. Atty., Jackson, Miss., for appellee.

Before HUTCHESON, Chief Judge, and JONES and BROWN, Circuit Judges.

HUTCHESON, Chief Judge.

This appeal is from a judgment for $11,252.05, entered in a civil action under Sec. 409 of the Defense Production Act of 1950,[1] because of overcharges found to have been collected by appellants by means of an unauthorized increase in price of one cent per quart of bottled milk sold for liquid consumption from January 1, 1952, through August 31, 1952. It was based upon findings of fact and conclusions of law,[2] which in turn were based upon undisputed and nonconflicting evidence consisting of stipulations, admissions and the deposition of appellants on interrogatories under Fed.Rules Civ.Proc. rule 33, 28 U.S. C.A.

Strongly emphasizing the fact admitted and found, that the evidence is not in

1. 50 U.S.C.A.Appendix, § 2109(c).

2. "The Court finds the following facts:

"1. Defendants, Deavours D. Bush and Arnold A. Bush are partners doing business under the firm name of Bush Dairy, and these two brothers operated three businesses during the time covered by the complaint: (1) a farm where milk was produced, the milk so produced being used in their dairy business, (2) a dairy using milk from their own farm and also milk bought from independent producers, and (3) an ice cream factory using surplus milk from its dairy plant.

"2. During the base period governing Bush Dairy under the O.P.S. Regulations which base period was Dec. 19, 1950 to Jan. 25, 1951, the price paid by Bush to producers for milk to be sold for fluid consumption was $5.87 per hundred weight (cwt) and during the base period, Bush Dairy sold bottle milk for fluid consumption at prices as shown in the agreement of counsel.

"3. On and after Jan. 1, 1952, and through Aug. 31, 1952, Bush Dairy raised its price on bottle milk sold to consumers 1¢ per quart or 45¢ per cwt but during this period Jan. 1, 1952, through Aug. 31, 1952, the price paid producers for bottle milk was $6.00 per cwt being only 13¢ per cwt above the base price of $5.87.

"4. During the base period Bush paid $3.00 per cwt for surplus milk but during the period from Jan. 1, 1952 through Aug. 31, 1952 it paid for surplus milk the amounts shown in the agreements of counsel.

"5. During the first eight months of 1952 the total overcharge at the rate of ½¢ per quart on the quantity of milk sold above the ceiling price allowable under the regulations was $11,252.05. A reasonable attorney's fee as agreed upon is $250.00.

"6. The facts set out in the first agreement of counsel and exhibits thereto and in the second or additional agreement of counsel and the facts dictated into the record on the trial of this cause constitute all of the facts herein and are not in dispute, but the material facts are as set forth in paragraph 1 through 5 supra."

"The Court concludes as matter of law:

"1. This Court has jurisdiction of this cause by virtue of Sec. 706(b) of the Defense Production Act of 1950 as amended [50 U.S.C.A.Appendix, § 2156(b)] and also by Section 1345, Title 28 U.S.C.

"2. Said Defense Production Act and the Regulations of the Office of Price Stabilization and particularly the Regulations with reference to the maximum ceiling price for milk and milk products and Supplemental Regulation 20 apply to defendants in this cause.

"3. Defendants in this cause violated said Price Stabilization Regulations by increasing the price of milk 1¢ per quart to consumers when as a matter of right defendants could have raised the price of milk only ½¢ per quart to consumers during the period from Jan. 1, 1952 through Aug. 31, 1952.

"4. The violation of the ceiling price regulations by defendant was neither wilful nor the result of failure to take practicable precautions against the occurrence of the violation.

"5. The plaintiff is entitled to a judgment in the amount of the overcharge at ½¢ per quart for each quart of bottle milk sold consumers during the period of the violation from Jan. 1, 1952, through Aug. 31, 1952, or a total sum of $11,252.-

conflict, appellants, as they did below, assert with confidence and argue with conviction, unaffected by the findings against them, that the record evidence does not support the findings and judgment. Indeed they insist that they find support only in appellee's confused and confusing computations and calculations which, though they were without support in the evidence, the district judge erroneously accepted as facts and made to serve as such.

Stating that in writing the brief, it has been difficult, if not impossible, to maintain distinction between fact and argument, that, "indeed, a clarification of the facts, if that can be accomplished, will expel all doubt and obviate argument to sustain this appeal", appellants thus point up their attack, thus state their case.[3] Resting on and proceeding from these premises, they seek earnestly to convince us that the district judge had no evidence on which to base his findings and that they may not stand.

Appellee, on its part, disputing the correctness of these premises, particularly the premise that the findings were based not upon facts but upon unsupported and erroneous computations and calculations, devotes a considerable part of its brief to a statement of the facts, setting them out specifically and in detail in fourteen numbered paragraphs.

Proceeding, then, to its argument and declaring that, in the trial of the case below, the government advanced what might be called the "bottle" theory, the defendants the "blend" theory, and that, in the brief now filed by counsel for appellant, a third theory, which might be called the "butter fat" theory, has been introduced, appellee states categorically that either the "bottle" or the "blend" theory, as advanced in the lower court, is correct, and that the "butter fat" theory is without bearing on the decision in this case.

Urging upon us that the "case is not as complicated as it appears on its face, and as it appears because of all the computations made and theories advanced by counsel opposite", and that "there is no real dispute in the facts shown in the record", appellee insists that if the government's "bottle" theory is the correct one, the case is a simple one. For, under the undisputed, indeed the admitted facts, the increased price, $6.00 per cwt to the defendants, an increase of only 13¢ per cwt over the base price, $5.87 per cwt, while sufficient to authorize them to increase their selling price ½¢ per quart, was not sufficient to authorize the actual increase made by them of 1¢.

Turning to the "blend" theory and insisting that, under that theory also, appellants would be liable for overcharges for the months of March, April, May, June, July and August, 1952, appellee concedes that during January and February, 1952, when appellants were paying $6.00 per cwt for all raw milk purchased, the increase in cost to them was sufficient to justify the raise in price of 45¢ per cwt which they made during

05 plus a reasonable attorney's fee of $250.00 with interest from date of the judgment and all costs."

3. "Appellants submit two main propositions. They are that all of the milk coming to their bottled milk plant was coming for the primary purpose of supplying the bottle milk trade, and therefore sales of surplus milk was a diversion of a portion of that 'common stream'; and that, the pricing schedule being based upon the butterfat content and the amount sold in bottles, as well as the amount diverted (either currently or previously), no computation, calculation, or determination of costs of raw milk and its relation to sale prices could be made without taking all of these factors into consideration. Any estimate or determination in the course of which any one of these relevant factors is omitted, can be no more than speculation and conjecture.

"Submerged in this is the question of whether or not milk coming from Bush Dairy Farm should be considered. This relates to both propositions stated above. The Court ruled that this milk should be excluded from the computations. Therefore, it adopted in its Findings of Facts calculations based on factors a. and c. in the Additional Agreement of Counsel, and, in effect, excluded factor c., the total raw milk sold except where raw milk sold to manufacturers exceeded milk to Bush Ice Cream Plant."

these two months to their bottle milk consumers. It then in its brief puts forward two alternatives. One of these is that if the "bottle" theory is accepted, the judgment of the court should be affirmed. The other is that if the "blend" theory is accepted, the judgment must be modified to include overcharges for the months of March, April, May, June, July and August alone, and to exclude them for the months of January and February.

On the oral argument, however, counsel for the appellee seemed to, and we are of the opinion that he did, concede that, under the overall facts, the "blend" theory ought to be accepted and the judgment reformed accordingly.

██ An examination of the record in the light of these contentions leads us to the conclusion that appellants overstate their case when they claim that the evidence is insufficient to support a finding of any kind for appellee. Indeed, we think that the contention assumes a required precision in the proof far beyond that required by common experience and the usages of courts. In our opinion, the difficulty in the case does not arise because of want of evidence to support a recovery on one or the other of the proposed theories, but because of the difficult questions posed as to which of the two theories is best supported in law and in fact. It arises, in short, out of whether the matter should be decided upon what appellants call the government's oversimplistic or "bottle" theory, which excludes all other milk except that bought for the bottle trade, or upon what appellants say is the proper one, by taking into consideration all the milk handled and all the uses made of all the milk, including that furnished the operation by the partners themselves.

Under all the circumstances, we are inclined to the latter theory, especially in view of the concession of the government in its brief and oral argument.

The judgment will, therefore, be reformed so as to exclude the claimed overcharges for the months of January and February, and include those for March to August, inclusive, and, as reformed, it will be affirmed.